# Louisville & Nashville Railroad Company v. Wilson, et al.

(Decided June 1, 1915.)

## Appeal from Estill Circuit Court.

1. Railroads—Eminent Domain—Measure of Damages.—Where a railroad company purchased from appellee for $750, a strip of land 100 feet wide, through his farm, upon which to construct its road, the price to cover all damage resulting to his farm by reason of the construction and operation of the railroad through same, and afterwards decided to change the location of its road about 82 feet at one end, and instituted proceedings to condemn the additional land required, the measure of damage was the difference in the value of appellee's whole farm with a railroad prudently constructed and operated upon the 100-foot strip originally pur-

chased, and the value of his whole farm with the railroad prudently constructed and operated as proposed by the new location.

2. Railroads—Right of Way—Damages.—$1,200 was an excessive allowance for the 91-100 acre required for the new construction, where it appeared that the first right-of-way contained 2 91-100 acres, and was, but a few months before, purchased for $750, and it was then agreed that the railroad might take as many more acres as needed at the price of $200 per acre, and where it also appeared that the new location was substantially the same as the first.

ROBERT R. FRIEND, WALLACE & HARRIS and BENJAMIN D. WARFIELD for appellant.

J. M. McDANIEL and HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

In 1912 the appellant constructed a railroad through Estill County, and the route passed through appellee's farm, for a distance of about 1,250 feet. In May of that year it purchased from him a right-of-way of 100 feet in width, consisting of 2 91/100 acres. The appellant paid the appellee $750 for this right-of-way, and obligated itself to construct a lawful fence on both sides and maintain one grade crossing over the road. The location of the crossing was not fixed by the deed. It was further provided in the conveyance that should the railroad company need additional land from which to borrow dirt in making the fills or to protect slopes, cuts, fills, or slides, that it could take same on payment to appellee at the rate of $200 per acre. Appellee's farm consists of 130 acres, triangular in shape, with its base on the Kentucky River. The railroad runs nearly parallel with the river and at an average distance of about 1,800 feet from it. It cuts the farm into two parts and runs along the division line between the hill and bottom land. All the farm buildings and improvements are situated on the hill lands, and about 300 or 400 feet from the railroad.

The appellant was placed in possession of this right-of-way and did some of the construction work, particularly next to the A. D. Powell's line. At this place it was making a fill, and had laid under it a line of drain-tile to carry the water of the branch which originated at a spring on Powell's land and flowed to the river through appellee's farm.

The evidence does not make it clear whether the one grade crossing stipulated in the right-of-way deed had been located or established at the time this dispute arose.

As the work progressed it became apparent to appellant that it would have to shift a part of its roadbed on appellee's farm toward the hills. At a point on appellee's land, 966 feet from the Powell line, a new survey was begun to swing the road in that direction. In other words, with the point on appellee's land as a pivot the 100-foot roadway by the time it reached the A. D. Powell line was swung eastwardly 82 feet, so that the east line of the new roadway at the Powell boundary was 82 feet from the east line of the original right-of-way. The effect of this change was to require a further small triangular piece of appellee's land. The 82-foot base of the triangle being on the A. D. Powell line, it left, of course, a triangle of the same size unused which had already been purchased of Wilson. The extra land required amounted to 91/100 acres. Doubting if the need for this land came within the contingencies stipulated in the deed, and being unable to reach an agreement with Wilson as to its value, the appellant instituted condemnation proceedings. The commissioners fixed the value and damage at $300, viz., $100 value of land and $200 damages. Wilson appealed to the county court and there a jury awarded him $1,200. The railroad appealed to the circuit court, and a jury again awarded Wilson $1,200.

The appellant argues, (1) that the damages were grossly excessive; (2) that counsel for appellee made improper argument to the jury; and (3) that the court permitted appellee to introduce improper testimony as to the elements of damage, and thereby established an improper measure of damages. After carefully reading the record, we have reached the conclusion that all of the objections are well taken.

When the proceedings were instituted appellant tendered a deed reconveying the unused 91/100 acres purchased originally. Some of this strip had been torn and covered up by the first construction, and the larger part was rendered unfit for farming purposes. In considering this case we will, therefore, treat a reconveyance as valueless. The road has been constructed and trains are now in operation on the revised roadbed.

The grade, as well as we can ascertain from the evidence, is about four feet higher than it would have been along the old right-of-way. The drain-tile was extended under the new fill so that the water of the spring branch is carried just as effectively as it would have been through the first fill; in fact, they amount to but one fill. We are unable to see from the evidence any possible damage to appellee as to this spring branch other than he would have sustained, if any, by reason of the original construction. A farm road crossing has been constructed at grade and rock ballast placed on the approaches to the track. The evidence is far from satisfactory that this change in the right-of-way has occasioned any change in appellee's farm crossing or any damage to him on that account. While it seems that the grade of the railroad has been raised several feet, it does not appear that the wagon road had been located with reference to the original construction, or that appellee has any different or more difficult roadway than he would have had, under the contract, over the road as first planned. At all events, if, on a new trial, facts develop to show that the additional right-of-way and change of railroad location over it has damaged the appellee by a change in the course of the spring branch or a change in the location of the grade crossing, these matters may be considered by the jury along with the actual value of the additional 91/100 acres taken.

In view of the terms of his deed, conveying the right-of-way, we are satisfied that the matters just referred to are the only elements of damage that should enter into this case.

Appellee's deed conveying the right-of-way contains this stipulation:

"It is understood that the foregoing land is purchased by the party of the second part for the purpose of constructing and operating thereon a railroad and facilities appurtenant thereto, and the consideration above named covers all damages to the adjoining lands of the party of the first part incident to the construction and operation of a railroad upon the land herein conveyed, including damages resulting from the ditching and diversion of surface water, which may be done by the party of the second part in the construction and maintenance of the said railroad."

Unquestionably, the measure of damage in this case is the difference in value of appellee's whole farm with a railroad prudently constructed and operated upon the 100-foot strip originally purchased for that purpose, and the value of his whole farm with a railroad prudently constructed and operated thereon as proposed in the new location. The appellee has already received compensation for the damages he will sustain from a prudent construction and operation of the railroad along substantially this same right-of-way, and the damage to his farm as a whole by reason thereof has already been discounted. He is only entitled to recover such additional damages as the taking of this small triangular strip of land will bring upon him.

But the testimony of appellee's witnesses demonstrates that they estimated the damages as the difference between the value of the farm before any railroad was constructed or operated thereon and its present value. The appellee himself measures it in that way. To illustrate, we quote from his evidence where he itemized the elements of damage:

"Putting that right between my house and the bottom land, it affects the value, if a man comes to look at it to buy it, and it cuts off my bottom land, where all my work goes, where I raise everything I produce—it has all to come out of there, everything I haul out of there has to come over it, manure, etc.; it cuts me off from any water there, and from the probability of getting my stock backwards and forwards to where water could be had. * * * It destroys a man's satisfaction of life and living. * * * Well, the shape it is in there, the house, it goes through right there a little bit below the middle of the piece of land in the center of my farm, and that connects my house and barn, and all the land with the bottom land below, it literally severs the farm into two pieces; it virtually destroys this piece of land taken in the place it is in; no man could afford to take $100 per acre for it, take it out of his farm in that place and cut it in two pieces."

His other witnesses, in testifying about the same matters, all make it clear that the amount of damage which they estimate is based upon their idea of the value of the farm without a railroad and its value with one located thereon. The witness Tuttel says:

"Q. Are you comparing it with the fact of having one down there (referring to the railroad) or not having any there at all. A. I am comparing it with not having any there at all."

His witnesses, Asa Witt and George McKinney, show that they, too, in fixing the depreciation in the value of the farm, base their judgment upon the difference in value of the Wilson farm before any railroad was built and the value with a railroad constructed clear through the place on the new location. This same idea was in the mind of all of appellee's witnesses, and their whole testimony was based upon it. They explained how a farm was depreciated in value when cut into two parts by a road; that in order to get from one part to the other the railroad would have to be crossed, and that it would be inconvenient to take stock from one part of the farm to the other, because they would have to be driven over the railroad; that the passing of trains over the rail-road would delay wagons, teams and pedestrians from going from one part of the farm to the other. None of these matters were competent, because they were already burdens upon appellee's farm, and he had accepted what he deemed a sufficient consideration therefor.

The court sustained many of appellant's objections, but by persistent questioning, over appellant's objections, appellee's counsel invariably got the facts before the jury, and frequently with the implied approval of the court. His argument was largely made up of irrelevant matter, based, in the main, on testimony much of which had been ruled out by the court, but gotten before the jury anyhow. In view of the circumstances already related, the verdict of $1,200 is not surprising, and that it is excessive can scarcely be doubted. Taking $750, appellee's own figures, as a fair compensation for 2 91/100 acres, and for all other direct and incidental damages to the remainder of his farm from the construction and operation of a railroad, and his agreement that any other lands adjacent to the right-of-way might be taken for its maintenance at the price of $200 per acre, it is manifest that the jury made their estimate from a false measure, or else were actuated by passion and prejudice when they allowed $1,200 additional for less than one acre; that acre being adjacent to the land already sold, and to be used for the same pur-

pose, and without causing any material change in the location of the railroad, so far as his farm is concerned.

The errors in the admission of incompetent testimony, and the excessive verdict require a reversal of the case, so that it is unnecessary to dwell at length upon the other errors. We will omit copying into the record a mass of improper and prejudicial argument indulged in by appellee's counsel. On the next trial, he will confine himself to the case, omitting references to dangers and inconveniences to persons, and damage to the farm as a whole by reason of construction and operation of a railroad through it. He will also keep out of the case any question of an underpass. Appellant was obligated to make one road crossing and that at the grade of the track—not under the track. His time to secure an underpass was not by argument to the jury, but when he contracted to sell to appellant.

The instructions, although not objected to, were framed after the form usually given in proceedings to condemn rights-of-way for the original construction of railroads. For this reason, they submitted many propositions and contingencies not involved here, and they necessarily confused the jury. There is no need for the jury to consider advantages or disadvantages to appellee's farm from the construction and operation of a railroad through it. The parties settled this by the right-of-way deed referred to. On a retrial of the case, the court will give the following instructions:

"Instruction No. 1. The jury will find for the defendant, L. C. Wilson, such a sum as they may deem, from the evidence, to be the fair and reasonable market value of the triangular strip of land taken, considering it in relation to his farm; they will also find such other damages, if any, as directly result to the remainder of his farm by reason alone of the changing of the railroad from the old location to the new.

"Instruction No. 2. The court instructs the jury that in estimating the damages to which the defendant is entitled under the foregoing instruction, they will exclude from their considerations any damages that might reasonably be anticipated to result from the location, construction and operation of the railroad as originally laid out on the old location and to allow nothing to defendant therefor.

The judgment of the lower court is reversed for pro-ceedings in conformity to this opinion.